TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 98-710 |
| of | : | |
| | : | November 16, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE BILL MORROW, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:

1.	Depending upon the individual circumstances, may a public entity be immune from liability for injuries arising from skateboarding that occurs on public property outside the confines of a skateboard park?

2.	May a public entity's immunity from liability for injuries arising from skateboarding that occurs on public property outside the confines of a skateboard park be affected by the entity posting notices stating that skateboarding constitutes a hazardous recreational activity?

CONCLUSIONS

1.	Depending upon the individual circumstances, a public entity may be immune from liability for injuries arising from skateboarding that occurs on public property outside the confines of a skateboard park.

2.	A public entity's immunity from liability for injuries arising from skateboarding that occurs on public property outside the confines of a skateboard park would not be affected by the entity posting notices stating that skateboarding constitutes a hazardous recreational activity.

ANALYSIS

The California Tort Claims Act (Gov. Code, §§ 810 - 996.6; "Act") **Footnote No. 1** governs actions at law for civil liability against public entities and their officers and employees. A public entity is not generally liable for an injury except as otherwise provided by statute. (§ 815; *Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 227.) By way of example of imposing liability expressly, a public entity may be held liable for a dangerous condition of its property. Section 835 states:

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

In keeping with a public agency's general immunity from liability, on the other hand, the Act specifically grants immunity in certain circumstances. For example, section 831.7 provides:

"(a) Neither a public entity nor a public employee is liable to any person who participates in a hazardous recreational activity, including any person who assists the participant, or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity.

"(b) As used in this section, 'hazardous recreational activity' means a recreational activity conducted on property of a public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator.

"'Hazardous recreational activity' also means:

"(1) Water contact activities, except diving, in places where or at a time when lifeguards are not provided and reasonable warning thereof has been given or the injured party should reasonably have known that there was no lifeguard provided at the time.

"(2) Any form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning thereof has been given.

"(3) Animal riding, including equestrian competition, archery, bicycle racing or jumping, mountain bicycling, boating, cross-country and downhill skiing, hang gliding, kayaking, motorized vehicle racing, off-road motorcycling or four-wheel driving of any kind, orienteering, pistol and rifle shooting, rock climbing, rocketeering, rodeo, spelunking, sky diving, sport parachuting, paragliding, body contact sports (i.e., sports in which it is reasonably foreseeable that there will be rough bodily contact with one or more participants), surfing, trampolining, tree climbing, tree rope swinging, waterskiing, white water rafting, and windsurfing. For the purposes of this subdivision, 'mountain bicycling' does not include riding a bicycle on paved pathways, roadways, or sidewalks.

"(c) Notwithstanding the provisions of subdivision (a), this section does not limit liability which would otherwise exist for any of the following:

"(1) Failure of the public entity or employee to guard or warn of a known dangerous condition or of another hazardous recreational activity known to the public entity or employee

that is not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose.

"(2) Damage or injury suffered in any case where permission to participate in the hazardous recreational activity was granted for a specific fee. For the purpose of this paragraph, a 'specific fee' does not include a fee or consideration charged for a general purpose such as a general park admission charge, a vehicle entry or parking fee, or an administrative or group use application or permit fee, as distinguished from a specific fee charged for participation in the specific hazardous recreational activity out of which the damage or injury arose.

"(3) Injury suffered to the extent proximately caused by the negligent failure of the public entity or public employee to properly construct or maintain in good repair any structure, recreational equipment or machinery, or substantial work of improvement utilized in the hazardous recreational activity out of which the damage or injury arose.

"(4) Damage or injury suffered in any case where the public entity or employee recklessly or with gross negligence promoted the participation in or observance of a hazardous recreational activity. For purposes of this paragraph, promotional literature or a public announcement or advertisement which merely describes the available facilities and services on the property does not in itself constitute a reckless or grossly negligent promotion.

"(5) An act of gross negligence by a public entity or a public employee which is the proximate cause of the injury.

"Nothing in this subdivision creates a duty of care or basis of liability for personal injury or for damage to personal property.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

The two questions presented for resolution concern the application of section 831.7 to skateboarding on public property. **Footnote No. 2** Is a public entity immune from liability under the terms of section 831.7 when the injuries are sustained while the person is skateboarding, and is the entity's immunity affected by its posting signs stating that skateboarding constitutes a hazardous recreational activity? We conclude that depending upon the particular facts, a public entity may be immune from liability under the terms of section 831.7 and that the posting of signs would not affect the entity's immunity.

In analyzing the relevant statutory provisions regarding these two issues, we are guided by several well established principles of statutory construction. "When interpreting a statute our primary task is to determine the Legislature's intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "Every word, phrase, and sentence in a statute should, if possible, be given significance. [Citation.]" (*Larson* v. *State Personnel Bd.* (1994) 28 Cal.App.4th 265, 276-277.) "'The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "[A] court . . . will not imply an unreasonable legislative purpose," but rather "a practical construction is preferred." (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1147.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)

1.      Hazardous Recreational Activity

The first question focuses upon whether skateboarding may constitute a "hazardous recreational activity" for purposes of section 831.7. We conclude that it may.

Looking at the language of the statute itself, we observe that the Legislature adopted a two-pronged definition of "hazardous recreational activity." In the first paragraph of subdivision (b) of section 831.7, it defined the term by describing the threshold of risk the activity must attain: ". . . a recreational activity . . . which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator." In the second paragraph of subdivision (b), the Legislature defined the term by identifying certain activities as constituting hazardous recreational activities. (*Acosta* v. *Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471, 476-477 ["The statute specifies certain activities as meeting this definition . . ."].) That the two definitions are independent of one another is indicated in the second paragraph of subdivision (b) which begins: "'Hazardous recreational activity' *also* means [the following specific activities]." (Italics added.)

In *Iverson* v. *Muroc Unified School Dist., supra*, 32 Cal.App.4th at 223-224, the court examined the legislative history of section 831.7 in determining the scope of the statute. The court stated:

"Some background on section 831.7 (Assem. Bill No. 555 (1983-1984 Reg. Sess.)) is helpful. At the time Assembly Bill No. 555 came before the Legislature in 1983, existing law provided that property owners owed no duty to keep the land safe or to warn of dangerous conditions when people were permitted to enter or use the land for recreation. However, the owner was subject to liability for willful or malicious failure to guard or warn against a dangerous condition; injury where permission was given for consideration; or injury incurred by a person expressly invited to enter the land. (Civ. Code, § 846.) Appellate courts were divided on the issue of whether the immunity available to a landowner under Civil Code section 846 was applicable to a public entity landowner.

"Assembly Bill No. 555, patterned after Civil Code section 846, sought to give a public entity and its employees specific qualified immunity from liability for injuries due to defined 'hazardous recreational activity" on public property. The source of the bill was the Oakland East Bay Regional Park District; it received support from numerous park and recreation districts, municipalities and counties. These public entities desired to keep their land open to recreational users but sought some protection against increasing numbers of personal injury actions by public property users engaging in such activities as hang gliding and rock climbing, and attendant escalating insurance rates." (Fn. Omitted.)

*Iverson* reviewed cases (id., at pp. 225-227) involving such hazardous recreational activities as surfing (*Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 355), swinging from a firehose hung over a tree limb (*DeVito* v. *State of California* (1988) 202 Cal.App.3d 264, 271), and diving into a shallow river (*City of Santa Cruz* v. *Superior Court* (1988) 198 Cal.App.3d 999, 1007), as well as a case in which skateboarding was found, in effect, to be a hazardous recreational activity in the specified circumstances (*Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492).

In *Bartell*, a 12-year-old boy was killed when he fell off his skateboard while holding onto a rope playing a game similar to "crack the whip." Both the *Bartell* court (83 Cal.App.3d at 227) and the *Iverson* court (32 Cal.App.4th at 227) had no difficulty in describing this recreational activity as "dangerous." Depending upon the total circumstances, therefore, skateboarding may be considered a "hazardous recreational activity" under the terms of subdivision (b) of section 831.7 even though it is not specifically so identified in the statute.

Of course, the public entity must prove in each case that the particular activity created a substantial risk of injury to the participant. In addition, the public entity must rebut any allegations that it

failed to guard against or warn of a known dangerous condition that was not reasonably assumed by the participant as inherently part of the activity or failed to properly construct or maintain in good repair the public property utilized in the hazardous recreational activity. (§ 831.7, subd. (c).)

We conclude in answer to the first question that depending upon the individual circumstances, a public entity may be immune from liability for injuries arising from skateboarding that occurs on public property outside the confines of a public skateboard park. **Footnote No. 3**

2.   Posting of Notices

The second question presented is whether a public entity's immunity from liability would be affected under the terms of section 831.7 if the entity posted signs on its property stating that skateboarding constituted a hazardous recreational activity. We conclude that such posting would not affect the public agency's immunity.

As noted in answer to the first question, certain activities have been deemed to be hazardous recreational activities by the Legislature. (§ 831.7, subd. (b)(1), (2), (3).) Other activities, such as skateboarding, may constitute hazardous recreational activities if, considering all the circumstances, they are determined to be activities that create "a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator." (§ 831.7, subd. (b).) The issue of whether a person is engaged in a hazardous recreational activity under the latter definition is a question of fact. (See *Yarber* v. *Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, 1519.)

Accordingly, the mere declaration that skateboarding constitutes a hazardous recreational activity for purposes of section 831.7 would not make it so. Rather, a court would have to decide the issue based upon all the relevant circumstances.

In answer to the second question, therefore, we conclude that whether a public entity is immune from liability for injuries arising from skateboarding that occurs on public property outside the confines of a skateboard park would not be affected by the entity posting notices stating that skateboarding constitutes a hazardous recreational activity.

\* \* \* \* \*

**Footnote No. 1**
All references hereafter to the Government Code are by section number only.
**Footnote No. 2**
The public property at issue is not a skateboard park for which the Legislature has provided a special, conditional immunity (Health & Saf. Code, § 115800).
**Footnote No. 3**
The legislation covering skateboard parks (Health & Saf. Code, § 115800) was not intended to apply to activities occurring outside of such parks. An analysis of its provisions is beyond the scope of this opinion.